05cv1318-King-1.wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN KING, et al., | : | Case No. 1:05-CV-1318 |
| Plaintiffs | : | |
| v. | : | JUDGE O'MALLEY |
| CENTERPULSE ORTHOPEDICS, INC., et al., | : | **MEMORANDUM AND ORDER** |
| Defendants | : | |

For the reasons stated below, plaintiff Susan King's motion to remand this case to the Cuyahoga County, Ohio Court of Common Pleas, where it was originally filed (docket no. 11), is **DENIED**.

**I. Procedural Background.**

Plaintiff Susan King originally filed this action in Ohio state court[1] against seven named defendants, including Zimmer Orthopaedic Surgical Products, Inc. ("Zimmer-Ortho") and Intermedics Associates, Inc. ("Intermedics"). King is an Ohio resident, as are Zimmer-Ortho and Intermedics; the other five defendants are all residents of other states.

---

[1] Actually, the lawsuit was filed by both Susan and Randolph King, husband and wife; for ease of reference, however, the Court refers only to Susan as the plaintiff.

Despite the fact that King, Zimmer-Ortho and Intermedics all share the same state of residency, the defendants removed the action to this Court on the basis of diversity jurisdiction. In their removal notice, defendants assert that complete diversity exists because King fraudulently joined Zimmer-Ortho and Intermedics. King disputes this assertion of fraudulent joinder and moves to remand.

During the course of briefing, King conceded that Zimmer-Ortho was not a properly named defendant.[2] Nonetheless, King continues to insist that Intermedics is a proper defendant and is not fraudulently joined. Accordingly, the sole question now pending before the Court is whether Intermedics is a proper defendant in this case; if it is, complete diversity does not exist and the motion to remand must be granted.

**II. Fraudulent Joinder.**

The Sixth Circuit Court of Appeals has recognized that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)); *accord Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"). To prove fraudulent joinder, however, the removing party must present sufficient evidence that a plaintiff cannot establish a cause of action against the non-diverse

---

[2] King's complaint originally named as defendants four "Zimmer"-related entities. After reviewing various materials provided by the defendants going to the corporate structure and relationships of these Zimmer entities, King conceded that Zimmer-Ortho was not a proper defendant. The three remaining Zimmer entities remain defendants, but there is no question regarding their diversity of citizenship from King.

2

defendants under state law. *Alexander*, 13 F.3d at 949. "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3rd Cir. 1992)). In attempting to make this demonstration, "a removing party is allowed to present evidence to prove that the plaintiff does not have a colorable basis for recovery against the non-diverse defendants." *City of Jackson, Tennessee v. Martty Golf Management, Inc.*, 2002 WL 1398542 at *2 (W.D. Tenn. Apr. 23, 2002); *see RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996) ("on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes"). That the parties may present jurisdictional evidence means "the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002); *Eckhart v. Depuy Orthopaedics, Inc.*, 2004 WL 524916 at *3-5 (S.D. Ohio 2004).

Under the doctrine of fraudulent joinder, the inquiry is whether the plaintiff has stated "at least a colorable cause of action against [the defendants] in the [Ohio] state courts." *Jerome-Duncan*, 176 F.3d at 907; *see Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) ("[t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law"). "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the] Court

must remand the action to state court." *Coyne*, 183 F.3d at 493. Put differently, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).

The removing party bears the burden of demonstrating fraudulent joinder, *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989), and removal statutes must be strictly construed, *Wilson v. U.S. Dept. of Agriculture*, 584 F.2d 137, 142 (6th Cir. 1978). Thus, the "burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Fields v. Reichenberg*, 643 F. Supp. 777, 779 (N.D. Ill. 1986); *see id.* ("In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts") (emphasis in original). The plaintiff's *motive* in joining a non-diverse defendant "is immaterial to [the] determination regarding fraudulent joinder." *Jerome-Duncan*, 176 F.3d at 907; *see also Harris v. Great Lakes Steel Corp.*, 752 F. Supp. 244, 246 n.4 (E.D. Mich. 1990) ("[t]he proper inquiry is whether there is any reasonable basis for asserting a claim against a defendant, not whether the plaintiff's motive in joining a defendant is to destroy diversity"). Similarly, whether the plaintiffs will ultimately recover against the removing defendants is also immaterial. *See Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits . . . order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings

4

in the case as it progresses"). The Court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 493.

**III. Analysis.**

In her complaint, King alleges she underwent right-knee replacement surgery in January of 1997, at which time she received a Natural Knee II Tibial Insert implant manufactured by Centerpulse. King alleges that defendant Intermedics was the distributor and seller of this implant. King further alleges that, in May of 2004, her implant ceased functioning properly, so that she had to have it removed and replaced with a different implant. Finally, King alleges she also received a Natural Knee II Tibial Insert implant when she had left-knee replacement surgery in September of 1997, and that Intermedics distributed this implant as well. Although King has not needed to have this left-knee implant removed and replaced, she alleges that it suffers from the same defects as did her right-knee implant. Based on these allegations, King brings the following claims against Intermedics: (1) negligence; (2) strict liability; and (3) breach of implied warranty.

Intermedics insists that, given King's allegations, she "does not have a colorable basis for recovery against [Intermedics]." *Martty Golf Management, Inc.*, 2002 WL 1398542 at *2. During the course of briefing, King conceded that her claim for breach of implied warranty against Intermedics is preempted by the Ohio Product Liability Act ("OPLA"), Ohio Rev. Code §2307.71 *et seq*. But King argues that she does have colorable bases for her negligence and strict liability claims against Intermedics. For the reasons stated below, however, the Court disagrees.

In Ohio, product liability claims are governed exclusively by the OPLA. It is clear that Intermedics qualifies as a "supplier," as that term is defined in the OPLA, and not a "manufacturer."

*See* Ohio Rev. Code §2307.71(A)(9, 15) (defining "supplier" and "manufacturer").[3] Under the OPLA, a supplier may be held liable for a product defect in only three defined circumstances. *See Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.*, 668 N.E.2d 529, 536 (Ohio Ct. App. 1995). First, under §2307.78(A)(1), a supplier may be liable if it was independently negligent, and that negligence proximately caused injury to the plaintiff. Second, under §2307.78(A)(2), a supplier may be strictly liable if it made an express representation to the plaintiff, to which the product failed to conform when it left the supplier's hands. Liability under these first two theories requires active conduct by the supplier that causes or contributes to the plaintiff's injury. *Id.* And third, under §2307.78(B), a plaintiff may hold the supplier liable as if it were the manufacturer, if the manufacturer is potentially culpable but absent from the proceedings. In this case, King does not seek to rely on this third form of supplier liability.

**A. King's Negligence Claim.**

The entirety of King's negligence claim is that Intermedics "owed a duty to [King] to exercise reasonable care to insure that [her knee implant] was fit for its intended use;" but that Intermedics, "in breach of [that] duty . . . , negligently and carelessly sold the knee replacement systems," proximately causing her harm. Complaint at ¶¶50-53. The complaint contains no further details regarding how Intermedics allegedly failed to exercise reasonable care.

With regard to the legal duty that Intermedics owed to King, Ohio case law explains that a "vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails

---

[3] Indeed, King does not argue that Intermedics may be held liable as anything other than a "supplier."

to provide a warning of such defect." *Brown v. McDonald's Corp.*, 655 N.E.2d 440, 445 (Ct. App. Ohio 1995). If the supplier "neither knows nor has reason to know that [the product sold] is, or is likely to be, dangerous, [then the supplier] is not liable in an action for negligence for harm caused by the dangerous character or condition of the [product] because of his failure to discover the danger by an inspection or test of the [product] before selling it." *Id.* (quoting 2 Restatement of the Law 2nd Torts §402 (1965)). In other words, a supplier can only be liable for negligence in a product liability case if it knew or had reason to know of the product defect.

Here, King does not even *allege* that Intermedics had any reason to know that her knee implants were in any way defective. Further, the evidence submitted by the parties provides no support for King's missing allegation. Intermedics supplies an affidavit averring that: (1) it played no role in the design of the implants; (2) it generally served only as a broker between Centerpulse and the purchasing hospitals, so that the implants normally shipped directly from manufacturer to surgeon; (3) on those occasions that Intermedics did take delivery of an implant, it was forbidden from opening the package and it never undertook to inspect or alter the product; and (4) Intermedics sold "thousands" of the same type of knee implants that King received, and never heard any report of a defect or claimed defect in those implants, before the date that it supplied King's implants.[4]

In response to this evidence, King supplies the deposition of Centerpulse's Director of Sales, Frank Jensen, who testified in another case regarding the roles generally played by suppliers of Centerpulse's implant products. Jensen, however, said nothing at all in this deposition about Intermedics in particular; further, he gave *no* testimony tending to support the missing allegation that

---

[4] Of course, despite the timing of this motion – at the earliest stages of this litigation – this Court may consider evidence outside of the pleadings in order to assess the scope of its own jurisdiction. Indeed, the Court has an obligation to engage in a searching analysis of that question.

Intermedics (or any other supplier) knew or had reason to know that King's knee implants were, or were likely to be, flawed. Jensen's testimony was limited to describing the tasks that the independent sales force usually performed.

On the evidence presented, there is simply no support for a claim against Intermedics that it was negligent in supplying King with her knee implants by virtue of having reason to know of an alleged defect. *See Chamberlain v. American Tobacco Co., Inc.*, 70 F.Supp.2d 788, 798 (N.D. Ohio 1999) (denying remand motion after assessing viability of OPLA claim because "[t]here is no allegation in plaintiffs' complaint that the Ohio defendants knew of the alleged nicotine 'defect' any sooner than members of the general public"). Put differently, there is not even "arguably a reasonable basis for predicting that [Ohio] law might impose liability" on Intermedics, based on a theory of negligent failure to learn of or disclose a flaw in King's knee implants. *Alexander*, 13 F.3d at 949. Intermedics' role as the supplier of King's implants, without more, is an insufficient legal predicate for a claim of negligence.

**B. King's Strict Liability Claim.**

King's strict liability claim against Intermedics is even more terse than her negligence claim; she alleges only that King's knee implants had dangerous defects and that the implants "reached [King] without substantial change in the condition in which they were sold." Complaint at ¶56.[5] King does not allege, for example, that Intermedics represented to her (or anyone else) anything at all about the knee implants.

---

[5] Notably, this allegation is consistent with Intermedics' evidence that it never altered the knee implants King received.

The OPLA allows a strict liability claim against a supplier if the "product in question did not conform, when it left the control of the supplier in question, *to a representation made by that supplier* . . . ." Ohio Rev. Code §2307.78(A)(2) (emphasis added). The OPLA explains that, for liability to attach, the representation at issue must be "an express representation of a material fact concerning the character, quality, or safety of a product." Ohio Rev. Code §2307.71(N); *Brown*, 655 N.E.2d at 444. As noted, King makes no allegation whatsoever regarding any express representation by Intermedics regarding her knee implants. In her briefs, King argues that, "[i]n order to induce [King's] orthopedic surgeon to utilize the knee replacement systems subsequently implanted in [King], the employees of [Intermedics] had to represent to the orthopedic surgeon that the knee replacement system was comparable to others on the market and should thus last decades." Reply at 4. This naked argument, however, is wholly without evidentiary support. King simply has not stated "a colorable cause of action" for strict liability against Intermedics. *Jerome-Duncan*, 176 F.3d at 907.

**IV. Conclusion.**

To succeed on a claim against a supplier under the OPLA, a plaintiff must plead and prove "active supplier conduct causing or contributing to the claimant's injury." *Welch Sand & Gravel,* 668 N.E.2d at 536. In the case of a negligence claim, the plaintiff must plead and prove that the supplier knew or had reason to know that the product was defective. In the case of a strict liability claim, the plaintiff must plead and prove that the product did not conform to an express representation made by the supplier. In this case, King did not even plead in her complaint that Intermedics engaged in either of these types of active conduct. Further, having pierced the pleadings

9

to undertake a limited examination of the jurisdictional evidence, the Court finds that King provides no factual color to her claims against Intermedics.[6]

Given that King has no colorable basis to recover against Intermedics, the Court concludes that defendants' fraudulent joinder arguments are well-taken. Accordingly, King's motion to remand must be denied.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: February 24, 2006

---

[6] King cites *Eckhart v. Depuy Orthopaedics, Inc.*, 2004 WL 524916 (S.D. Ohio 2004), as an example of a medical-implant case where remand was granted based on the viability of claims against the implant supplier. In that case, however, the court repeatedly noted that the claims against the supplier were based on "an allegation in a pleading" that had at least mixed evidentiary support. *Id.* at *6. Here, both the allegations and the evidentiary support are missing.